# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| NISSEI ASB CO. & | ) | |
| NISSEI ASB MACHINE, CO., LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:19-CV-00042-DGK |
| | ) | |
| R&D TOOL & ENGINEERING CO., | ) | |
| | ) | |
| Defendant. | ) | |

## CLAIM-CONSTRUCTION ORDER

This lawsuit concerns the design and sale of molding equipment used to manufacture containers, such as bottles and jars, used in a variety of industries. Plaintiffs Nissei ASB Co. and Nissei ASB Machine Co. contracted with Defendant R&D Tool & Engineering Co. allowing Defendant a one-time license to make a single mold to fit the ASB-150DPW machine manufactured by Plaintiffs. Plaintiffs allege Defendant subsequently altered this machine and began marketing it as Defendant's own. Plaintiffs contend Defendant breached the contract, misappropriated trade secrets regarding the machine's design, tortiously interfered with Plaintiffs' business relations, and infringed three patents owned by Plaintiffs. Defendant denies infringing any of the patents, and moreover, claims the patents are neither valid nor enforceable.

Within the patents, the parties dispute the proper construction of six terms and phrases. The Court rules on the appropriate construction to be given the six disputed terms and phrases.[1]

---

[1] In reaching its decision the Court has carefully considered the parties Joint Claim-Construction Statement (Doc. 64), as well as the arguments raised in Defendant's Opening Claim-Construction Brief (Doc. 72), Plaintiffs' Claim-Construction Brief (Doc. 82), and Defendant's Reply Claim-Construction Brief (Doc. 87). After reviewing the briefing, the Court found that no claim-construction hearing, as set out in *Markman v. Westview Instruments, Inc.*, was needed. 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

## Background

Plaintiffs design, build, distribute, market, and sell injection blow-molding machines, including the ASB-150DPW machine. Plaintiffs own three patents—Blow Molding Apparatus, U.S. Patent 8,613,614 (filed Mar. 11, 2012) ("the '614 patent"); Blow Mold Unit and Blow Molding Apparatus Using the Same, U.S. Patent 8,998,602 (filed July 30, 2012) ("the '602 patent"); and Blow Mold Unit and Blow Molding Apparatus Using the Same, U.S. Patent 8,608,466 (filed Mar. 11, 2012) ("the '466 patent")—pertaining to the ASB-150DPW blow mold machines.

Plaintiffs entered into a contract with a third party who requested that Defendant make a mold to fit the ASB-150DPW machine. To accommodate that request, Plaintiffs and Defendant entered into a contract giving Defendant a one-time license to make a single mold. During the process of creating a mold, Plaintiffs allege that Defendant took unauthorized measurements and performed an unauthorized audit of the molding machine. Defendant admits that they conducted the audit and took measurements but deny that this was unauthorized or a violation of trade secrets and confidential information.

As part of this suit, both Plaintiffs and Defendant assert various claims related to the three patents held by Plaintiffs relating to their validity, infringement, and enforceability. In part, those claims rely on the proper construction of six terms and phrases. The first three disputed terms are found in the '614 patent, and second three disputed terms are found in the '466 and '602 patents. The Court now takes up the construction of those terms.

## Standard of Review

Judges, not juries, decide issues of patent interpretation. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc) ("construction of a patent is a matter

of law exclusively for the court"), *aff'd*, 517 U.S. 370 (1996). This process of interpretation is called claim construction. The Court's ruling is the first step in determining whether the challenged patents have been infringed or are invalid, and the constructions could be outcome determinative. *See* Herbert F. Schwartz, *Patent Law and Practice* 116 (5th ed. 2006).

Patents contain a section outlining their claims. The claims "point[] out and distinctly claim[] the subject matter which the inventor or joint inventor regards as the invention." 35 U.S.C. § 112(b) (2012). Prior to the claims, patents contain a specification. The specification is "a written description of the invention . . . [in] full, clear, concise, and exact terms as to enable any person skilled in the art to which [the patent] pertains" to know what the patent describes and protects. *Id.* at § 112(a).

Within the legal system, patents have an important public-notice function. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (en banc); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1311 (Fed. Cir. 1999). The patent's language not only sets forth the limitations of the patent but also gives "notice of the scope of patent protection." *Johnson & Johnston Assocs. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 730–31 (2002) ("a patent holder should know what he owns, and the public should know what he does not.").

When a court engages in claim construction, it "should look first to . . . the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (internal citations and quotations omitted). When approaching a disputed claim term, courts first look to so-called "internal evidence," which includes the words of the claims themselves, the specification, and the

prosecution history. *Vitronics*, 90 F.3d at 1582. Anything else is extrinsic evidence and is only used if the disputed terms cannot be construed after the internal evidence is considered. *Id.*

Claim terms are generally given their "ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. If the court cannot determine this meaning based on the claim language alone, it first turns to the specification, looking at the drawings and descriptions of the invention to help in drawing a conclusion. *Id.* at 1315. If the meaning is still unclear, the court may turn to the prosecution history. The prosecution history is the record of filings in the U.S. Patent and Trademark Office. John L. Cooper, *Claim Construction—The* Markman *Hearing*, *in Anatomy of a Patent Case* 98 (2d ed. 2012). It can be useful in determining what the patentee understood to be the scope of the patent at the time of filing. *Phillips*, 415 F.3d at 1317.

When internal evidence alone is insufficient to ascertain the plain meaning of a claim term, courts may consider extrinsic evidence. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008); *Vitronics*, 90 F.3d at 1583. Extrinsic evidence includes expert testimony, dictionaries, and other helpful scientific, technological, or state-of-the-art resources. *Phillips*, 415 F.3d at 1314. But because there is a "virtually unbounded universe of potential extrinsic evidence," a court may disregard parties' proffered evidence as only providing a favorable, one-sided view of the issue and suffering from bias in favor of the offering party. *Id.* at 1318.

The Court notes that in addition to the parties' briefing and the legal standards set out above, it has also received an affidavit from Plaintiffs' expert along with excerpts from his deposition. While the Court used these documents to aid in clarifying the disputes before it, it did

not use the affidavit or deposition excerpts in its analysis because the internal evidence alone was sufficient to properly find a construction.

**Disputed Claim Language and the Court's Constructions**

The parties dispute the meaning of six terms and phrases contained within three of Plaintiffs' patents. The first three disputed terms are in the '614 patent and the second three disputed terms are found in the '466 and '602 patents. The Court construes each term in turn below.

## I.     "Inserted into"

The phrase "inserted into" is used in claims one, seven, eight, and ten. In essence, the dispute over this claim arises over a use of the term that seems to indicate "inserted *onto*" rather than "inserted *into*." The language of claim one is representative of the dispute:

> 1. A neck mold assembly comprising:
> . . .
> two guide shafts that are respectively **inserted into** the two second through-holes; and
>> two biasing members that are respectively **inserted into** the two guide shafts, and bias the pair of split plates in a closing direction.

'614 Patent, cols. 21–22 (emphasis added). The term is used a total of five times in the '614 patent.

Plaintiffs ask the Court to construe the phrase to mean "fitted within," a construction they claim is in line with the phrase's ordinary and plain meaning. To support this construction, they assert that this is the only phrase that encompasses every use of "inserted into" in the patent. In particular, Plaintiffs point to the final use of the term, where a biasing member is "inserted into [the length] of the guide shaft." They also point to the affidavit and testimony of their expert witness and extrinsic dictionary evidence.

Defendant asks the Court to construe the phrase to mean "placed inside and surrounded by or enclosed by." It claims this construction is consistent with the phrase's plain and ordinary meaning. For the Court to find a different construction would necessarily mean that the patentee acted as lexicographer and redefined the term to fit its use within the patent. Because the patent does not provide evidence of any redefinition, Defendant wants this Court to adopt its construction.

The Court agrees with both parties that the ordinary and customary meaning should govern this term. *See Phillips*, 415 F.3d at 1312–13. Claim terms are generally given their "ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1313.

An exception to this rule occurs when patentees act as their own lexicographers. Patentees act as their own lexicographers when they clearly set forth a definition for a term different than its ordinary and customary meaning. *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). If a patentee chooses to act as lexicographer, however, any non-ordinary meanings of terms must be clearly defined. *Markman*, 52 F.3d at 980. This redefinition of a claim term can be explicit, like stating that a particular term "means" a certain definition, or the terms "are defined below." *See Martek Biosciences Corp. v. Nutinova*, 579 F.3d 1363, 1380 (Fed. Cir. 2009); *Thorner*, 669 F.3d at 1366. Or a redefinition can be implicit, like where the patent documents only allow a particular understanding. *Bell Atl. Network Servs. v. Covad*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) ("the specification may define claim terms 'by implication' such that the meaning may be 'found in or ascertained by a reading of the patent documents.'" (quoting *Vitronics*, 90 F.3d at 1582, 1584 n.6)). But in both circumstances, any redefinitions must be clear and intentional. *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014).

Similarly, patentees are bound by the limitations found in their claims, even if those limitations were unintended. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004). Of the five times Plaintiffs use the term in their patent, four of them fit the definition offered by Defendant. '614 Patent col. 22, ll. 9, 11, 51, and 59. It is only the final use of the term on which the parties disagree. Plaintiffs attempt to describe the term as having "one consistent meaning" (Doc. 82 at 12), but their attempts are unavailing.

Here, in construing this phrase, the Court looks to the claims as a whole and not to each individual use of the term in isolation. The Court finds this phrase is used inconsistently in the '614 patent. In the final use, it appears the patentee used the wrong term to describe this process. The definition Plaintiffs are advocating for as the "plain and ordinary meaning" for "inserted into" more accurately describes the term inserted *onto*. While this redefinition would be allowed if Plaintiffs had acted as their own lexicographers in their patent, the Court finds that they have not.

Any attempts by the patentee to redefine "inserted into" must be clear. *Phillips*, 415 F.3d at 1319 (citing *Tex. Dig. Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)). Here, the term means "placed inside and enclosed by" four times, and then is followed by what appears to be a typo. Plaintiffs seek to construe this typo to have a meaning directly opposed to the use of the term in its first four occurrences. But construing the same term to have two different and directly opposed definitions does not meet the level of clarity and definiteness to find that "inserted into" has been redefined to mean both inserted into and inserted onto.

It is therefore held that in the '614 patent, the term "inserted into" has its plain and ordinary meaning which is "placed inside and surrounded by or enclosed by."

**II.**     **"Securing section" and "a first securing section that is secured to the at least two reinforcement shafts"**

The disputed language is contained in claims one, three, four, six, and eleven through sixteen of the '614 patent. This dispute concerns whether the "section" portion of the phrase "securing section" can be made up of multiple pieces or if it must be one single piece. Representative language from claims one and six is:

> 1. A neck mold assembly comprising:
> . . .
>           two first **securing sections** that are secured at either end of the at least one reinforcement shaft,
> . . .
> 6. A neck mold assembly comprising:
> . . .
>           **a first securing section that is secured to the at least two reinforcement shafts** . . .

'614 Patent col. 21 ll. 58,66–67; col. 22 ll.32, 40–41 (emphasis added).

Plaintiffs propose that "securing section" be construed as "a section immovably affixing at least one reinforcement shaft to support N rows of holding plates," and "a first securing section that is secured to the at least two reinforcement shafts" be construed as "a section that is immovably affixed to the at least two reinforcement shafts, immovably affixing the at least two reinforcement shafts to support the N rows of holding plates." They do not find any disavowal in the prosecution history, but even if the Court looks to the prosecution history, they assert that any potential disavowal is not clear and unmistakable. They also deny that the prior art[2] at issue in this construction references the same "reinforcement shafts" at issue here.

---

[2] "Prior art" refers to a patent's requirement that an invention not be "known or used by others . . . or patented or described in a printed publication . . . ." 35 U.S.C. § 102(a). A patentee's knowledge, use, patents, and publications are all considered relevant prior art. *See* Schwartz, *supra*, at 74–79.

Defendant proposes that the Court construe "securing section" as "a rigid fastener holding different machine components together," and "a first securing section that is secured to the at least two reinforcement shafts" be construed as "a single rigid fastener holding at least two reinforcement shafts."  It argues that the prosecution history shows that patentees disavowed the broader scope and that the "reinforcement shafts" at issue here are the same as in the prior art.

Disavowal of the scope of a patent term occurs when patentees construe claim terms "one way in order to obtain their allowance and in a different way against accused infringers." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998).  Disavowal does not need to be explicit, but it must be "clear and unequivocal." *Poly-Am., L.P. v. API Indus. Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016).  Defendant claims that the patent was construed narrowly to prevail against the prior art, and Plaintiffs are now impermissibly asking the Court to construe the patent broadly against an alleged infringer.

The claim language itself is unclear whether a securing section must be a single unit or may be comprised of multiple pieces.  Important to these terms are the claim preambles.[3]  When it comes to patent preambles, the use of "comprising" as the transition word indicates that the claim language following it is open-ended.  *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007).  When a claim following this open-ended phrase uses the singular "a" or "an," a court should not limit "a" to mean one, unless the claim clearly intends to limit the indefinite article to mean one.  '614 Patent; *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).  So here, while the patent suggests that a securing section is a singular unit—"a securing section"—the Court will not limit it to a single piece based on its article "a" because it occurs in a claim whose preamble uses the open-ended "comprising."

---

[3] A preamble is the introductory phrase that precedes the body of the claim.  Schwartz, *supra*, at 147.

Since the claim language is unclear, the Court next turns to the specification. *See Phillips*, 415 F.3d at 1315. When disputed language is found in both the claim and specification, courts should generally construe the term consistently as it is found in both places. *Id*. at 1323. Here, the specification seems to suggest that a securing section is a single piece: "two first securing sections that secure either end of the at least one reinforcement shaft." '614 Patent col. 9 ll. 18–19. In Figure 25, the specification identifies each securing section as a single piece.[4] But, while this language is helpful, the Court must be careful not to import any limitations into the claims from the specification. *Phillips*, 415 F.3d at 1323. Were the Court to construe "a securing section" as requiring the section to be a single piece, it could be improperly importing a limitation from the specification into the claims. On the other hand, the term's use in both the claims and the

FIG. 25



---

[4] The piece labeled 330 represents a securing section.

specification both suggest a single unit, and so such a construction would not destroy consistency between the claims and specification.

Finally, because the Court cannot fully determine the best construction after looking to the claim language and the specification, it turns to the prosecution history. Here, the prosecution history shows that the patentee made changes in the patent based on the response from the patent examiner. In particular, the patentee added new claims. For the purpose of construing this disputed term, the crucial addition is claim six. Claim six is an independent claim[5] that helps clarify the structure described in claim one. Claim one references "two first securing sections," while claim six discusses "a first securing section." '614 Patent. The patentees added claim six after the patent examiner rejected claim one in their original patent application. *See* Application 13/760,981, USPTO Office Action (filed Feb. 6, 2013).

Claim six was added to distinguish the '614 patent from prior art that uses "a bolt with nuts screwed onto ends" but does not use "a first securing section that is secured to at least two reinforcement shafts." *See* Amendment and Response to Official Action Dated May 21, 2013, at 9. The prior art uses only "one reinforcement shaft" while the new claim discloses two reinforcement shafts.

Unlike Plaintiffs contentions, the prosecution history clearly identifies the bolt at issue to be a "reinforcement shaft" and not a guide shaft. *Id.* Moreover, the prior art discloses a section being held by a single reinforcement shaft. The Court finds this construction was clearly and unmistakably disclaimed in the prosecution history. *Id.* ("[the prior art] does not disclose a first

---

[5] An independent claim is a completely self-contained statement that does not rely on language found in other claims. In contrast, a dependent claim relies on the language and limitations of an earlier claim. Independent claims generally have a broader scope than dependent claims. Schwartz, *supra* at 16, 133.

securing section that is secured to at least two reinforcement shafts"). A construction that allows a securing section to be held by only one reinforcement shaft, therefore, would not be permissible.

Taking the claim language, specification, and prosecution history together, the Court finds that "securing section" is "a single fastener unit that holds together different objects, preventing those objects from moving," and "a first securing section that is secured to the at least two reinforcement shafts" means "a securing section that holds down at least two reinforcement shafts, at least one reinforcement shaft at each end of the securing section."

### III. "Supporting-mechanism" and "support-transfer member"

The disputed terms are found in claims one, three, and six of the '614 patent. Representative language from claims one and three are below:

> 1. A neck mold assembly comprising:
> . . .
> a **supporting-mechanism** that supports the N rows of holding plates, the supporting mechanism including:
> . . .
> 3. The neck mold assembly as defined in claim 2,
> the **support-transfer member** further including a second securing section that secures an intermediate part of the at least one reinforcement shaft at a position between the N rows of holding plates.

'614 Patent col. 22 (emphasis added).

Plaintiffs propose that the Court construe both terms to indicate "a mechanism that supports N rows of holding plates." Their argument focuses on the first term, "supporting-mechanism," arguing that the definition is self-evident within the claims as applied to both disputed terms. Defendant, on the other hand, focuses on the second term, "support-transfer member." It proposes that the Court construe both terms to mean "transfer plate." This construction is supported by the specification through the use of a parenthetical phrase introduced by "i.e." But what both parties

overlook is the general rule that different terms in a claim should be construed to have different meanings, absent clear contrary evidence. *Helmsderfer*, 527 F.3d at 1382. Here, the patent uses two different terms, so absent clear evidence to the contrary, this Court should construe each term to have a distinct meaning.

The Court first defines "supporting mechanism." The claim language itself supports construing "supporting mechanism" as a device "that supports the N rows of holding-plates" and includes the elements listed in claims one and six. '614 Patent col. 21–22. This plain and ordinary language is self-defining, and no further analysis is needed.

The Court turns next to "supporting mechanism." Because the claim language alone does not provide a definition, the Court looks to the specification. The specification must describe the claimed invention in "full, clear, concise, and exact terms." 35 U.S.C. § 112 (2012). A patent is presumed to be understood in its entire context by a person of ordinary skill in the art, *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005), and claim language serves to inform the public as to the scope of the patent's protection, *Johnson & Johnston Assocs.*, 285 F.3d at 1052.

"Supporting-mechanism" is presented in the specification within a parenthetical introduced by the signal "i.e." The use of "i.e." in a patent's specification signals the patentee's intent to "define the word to which it refers." *Edwards Lifesciences*, 582 F.3d at 1322; *Skinmedica, Inc. v. Histogen, Inc.*, 727 F.3d 1187, 1200 (Fed. Cir. 2013); *Abbott Labs. v. Novopharm Ltd.*, 323 F.3d 1324, 1330 (Fed. Cir. 2003). But if a contextual reading of the patent clearly indicates otherwise, the use of "i.e." alone is insufficient to redefine a claim term. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1370 (Fed. Cir. 2012) (finding use of "i.e." in prosecution history not a disavowal of scope but explanation for included drawing). Section 112 requires clarity, conciseness, and

exactitude because patents put the public on notice as to what rights patentees have in their patents. A patentee is given "the right to exclude" others from using the specific invention described in a patent. *Phillips*, 415 F.3d at 1312; *Pitney Bowes*, 182 F.3d at 1311. If a redefinition of a term is not sufficiently clear, the reader is not on notice as to what the patent protects.

Here, the specification uses a variety of parenthetical phrases. At times those phrases are introduced with "i.e." Other times, the phrases start with "e.g." or have no introductory signal. Therefore, because patents are presumed to be understood in their entire context by a person of ordinary skill in the art, the Court finds it must consider all three of these uses of parenthetical phrases to ensure each parenthetical phrase is given the proper context.

The patent's most straightforward use of parenthetical phrases is as a reference to its drawings: "see FIG. 2" ('614 Patent col. 11 *l.* 17). At other times, the parentheses seem to refer to a definition of the immediately preceding word: "N (N is an integer equal to or larger than 2) . . . ." '614 Patent col. 1 *l.* 46. Looking at the uses of "e.g.", the patent seems to consistently use the term to mean "for example": "an elastic member (e.g., O-ring)," '614 patent col. 15 l. 16; and "an odd number (e.g., N=3)," '614 patent col. 18 l. 51.

Turning to the use of "i.e.", the Court found ten uses of "i.e." in the patent. In particular, the specification includes language indicating that "support-transfer members" and "transfer plates" are equivalent: "The rotary transfer blow molding apparatus also includes four transfer plates (i.e., support-transfer members) . . . ." '614 Patent col. 10, ll. 62–6.

A contextual reading of the patent, looking to whether i.e. is consistently used to redefine the words it follows, did not indicate that i.e. was not meant to redefine any terms. Reading the entire patent in context, paying special attention to the use of parenthetical phrases, did not contradict or otherwise negate the use of "i.e." to redefine claim terms.

Therefore, the Court holds that "supporting mechanism" is "a device that supports the N rows of holding-plates" and a "support-transfer member" is a "transfer plate."

## IV.    "A base" and "blow molding apparatus"

The Court now turns to the second set of disputed terms, which are found in the '602 and '466 patents. These disputed terms are found in claims one, two, ten through fifteen of the '466 patent, and claim one of the '602 patent. Below is representative language from claims one and twelve of the '466 patent:

> 1. A blow mold unit that is secured on **a base** of a **blow molding apparatus**, the blow mold unit comprising:
>
>     . . .
>
> 12. A **blow molding apparatus** comprising:
>
>     **a base**;
>
>     a blow mold unit that is secured on **the base**, the blow mold unit including
>
>     . . .
>
>     a mold closing/opening device that is provided on **the base** and drives the first securing member and the second securing member of the blow mold unit . . .
>
>     a driver device that is provided under **the base** . . .

'466 Patent cols. 22, 25 (emphasis added).

Plaintiffs propose construing "base" as "the component of a blow molding apparatus, such as a platform, upon which the blow mold unit is disposed" and "blow molding apparatus" as "a blow molding machine." To support this construction, they point to the various uses of "base" in both the claims and the specification. They also contend that because "blow molding apparatus" is used only in claim preambles, it would be inappropriate to treat it as a limitation on the following claim language.

Defendant proposes construing "base" as "the floor or ceiling of blow mold machine" and "blow molding apparatus" as "a complete blow mold machine capable of producing molded

articles." It claims both terms should be treated as limiting because terms that "give life, meaning, and vitality to the claim[s]" are treated as limiting. *Pitney Bowes*, 182 F.3d at 1305.

First, looking at the use of "base" of the claims in the '466 and '602 patents, the claim language itself does not allow for Defendant's construction. Claims one, ten, eleven, twelve, thirteen, fourteen, and fifteen all describe a blow mold unit that is "secured *on* a base." '466 patent, col. 22, l.26; col. 24 ll. 11, 48; col. 25 ll. 4, 7, 23; col. 26 ll. 3, 64; col. 27, l. 20; col. 8 ll. 21, 24 (emphasis added). Claims twelve and thirteen describe a driver device that is "provided *under* the base." '466 patent, col. 25 l. 64; col. 26 l. 58 (emphasis added). Therefore, limiting the construction to a floor or ceiling as Defendant's urge does not keep with the plain language of the claims. Moreover, the specification of both patents speaks of "upper" and "lower" bases. *See, e.g.*, '466 patent, col. 11, ll. 15–52. Therefore, the Court holds that "base" is construed to indicate the "component upon which the blow mold unit is disposed."

Next, considering the "blow molding apparatus," the Court again finds that the Defendant's suggestion is incompatible with the plain language of the claim. "Blow molding apparatus" appears only in the claim preambles and describes the entire machine, which is made up of various components.

Generally, preambles do not limit claims. *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). A preamble may be limiting if it identifies additional structures not found in the claim terms or provides an antecedent basis for the claim. *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1357–58 (Fed. Cir. 2012). But where the preamble "merely gives a descriptive name" to the elements of the claim, the preamble is not limiting. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000). That is

the case here. "Blow molding apparatus" merely gives a name to the elements listed in the claims. It does not impose any new restrictions or limitations on the claims.

Defendant's suggested construction simply does not have the textual support necessary to import any limitations from the phrase. There is no textual support for limiting the blow mold apparatus to a "complete" machine. Nor does the modifier "capable of producing molded articles" add to the understanding of the term. Therefore, "blow molding apparatus" is construed to be a "blow molding machine."

### V. "Pressure-receiving member"

"Pressure-receiving member" means "a member that receives clamping force pressure applied to the blow cavity split molds during molding." The disputed terms are found in claims one, two, four, seven, ten, eleven, twelve, thirteen, fourteen, and fifteen in '466 Patent and claims four and six of the '602 Patent. Representative language is below:

> A blow mold unit that is secured on a base of a blow molding apparatus the blow mold unit comprising:
> . . .
> a plurality of first **pressure-receiving members**, the plurality of first **pressure-receiving members** being respectively disposed on either side of the first blow cavity split mold
> . . .
> a plurality of second pressure-receiving members that are secured on the first securing member and the second securing member at a position below the third securing member.

'466 Patent col. 22 (emphasis added).

> The blow mold unit as defined in claim 3, further comprising:
> . . .
> a plurality of first **pressure-receiving members**, the plurality of first **pressure-receiving members** being respectively disposed on either side of the first blow cavity split mold and either side of the second blow cavity split mold . . . ,
> . . .

17

> a plurality of second **pressure-receiving members** that are secured
> on the first securing member and the second securing member at a
> position below the third securing member, . . . .

'602 Patent cols. 22–23 (emphasis added).

Defendant proposes the term be construed to mean "a pressure-receiving flat sheet of material of uniform thickness throughout." Essentially, Defendant asks this Court to construe "member" to mean "plate." First, it asserts that the patent uses "pressure receiving plate" throughout the patent, except in the claims. Second, patent claims one, two, four, seven, thirteen, and fourteen were all approved with the term "pressure-receiving plate." While the Patent Examiner did reject and object to some claims, those rejected or objected to claims that were for a different matter—the obviousness of modifications to increase the output of the molding machine. The use of the term "plate" was never an issue. Indeed, the Examiner specifically allowed the use of "pressure-receiving plates" in claim one as nonproblematic. Therefore, Plaintiffs' change from "plate" to "member" after the claims were approved and the use of "plate" throughout the specification all support its definition that "member" should be limited to mean "plate."

Plaintiffs, on the other hand, propose that the term be construed to be "a member that receives clamping force pressure applied to the blow cavity split molds during molding." They argue that "member" has a broader definition than "plate." First, the language of the claims—the paramount source for claim construction—uses "member" and not "plate." Second, they point out a single instance where a securing member is referred to as "plate-shaped." Moreover, in their response to the Examiner's response, Plaintiffs specifically identified their change from "plate" to "member" in their claims. The Examiner did not respond to this clearly identified change, and, in any case, an Examiner's "Statement of Reasons" for an allowance does not necessarily limit a claim. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) (citations omitted)

In construing this term, the Court is careful not to import any limitations into the claim language from the preferred embodiment outlined in the specification. *Innova/Pure Water*, 381 F.3d at 1122. Unlike terms found in the specification, terms "found in the 'Summary of the Invention' portion of the specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions . . . ." *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004). Moreover, terms should be given the "broadest reasonable construction in light of the specification." *Phillips*, 415 F.3d at 1316 (internal citations omitted).

While the use of "plate" in the Summary of the Invention is persuasive, ultimately the Court cannot construe "pressure-receiving member" as Defendant proposes. Because the claim language refers to "pressure-receiving members" and the prosecution history clearly identifies the change from "plate" to "member" in the pertinent claims, the Court holds that "member" has a broader scope than "plate." Therefore, "pressure-receiving members" is construed to be "a member that receives clamping force pressure applied to the blow cavity split molds during molding."

### VI. "an upward position at which the roller does not come into rolling contact with the base"

Both the '466 Patent and the '602 Patent contain the disputed phrase:

> A blow mold unit that is secured on a base of a blow molding apparatus, the blow mold unit comprising:
>
> . . .
>
> each of the two securing blocks including a roller that comes in rolling contact with the base, and a roller driving member that moves the roller downward from **an upward position at which the roller does not come in rolling contact with the base** to a downward position at which the roller comes in rolling contact with the base.

'602 Patent col. 22 ll. 34–39; '466 Patent col. 23 ll. 62–67; col. 24 ll.42–47, col. 27 ll. 31–35 (emphasis added).

Plaintiffs' propose the phrase be construed as "an upward position at which the roller does not come in contact with the base sufficient to reduce the burden to slide the mold on the base." Defendant, on the other hand, suggests the phrase be construed as "an elevated position at which the roller does not come into rolling contact with the base."

At the outset of this construction, the Court notes that its construction should strive to give effect to all the terms in a claim. *Deere & Co.*, 703 F.3d at 1354; *Innova/Pure Water*, 381 F.3d at 1119 ("While not an absolute rule, all claim terms are presumed to have meaning in a claim."). Here, the Court applies that principle to the term "rolling." If the Court were to adopt Defendant's proposed construction, the term "rolling" would not be given effect.

Considering the claim language in light of the specification, "contact" with respect to the roller and lower base is solely referred to as "rolling contact." Indeed, the specification clarifies that when the roller has come into "rolling contact with the lower base, the blow mold unit can be slid on the lower base by merely pressing the blow mold unit so that the burden due to attachment/removal work can be reduced." '466 patent, col. 20 ll. 14–18.

Given this explanation, the Court finds that Plaintiffs' construction does not improperly import a limitation from the specification into the claim language. Instead, the construction merely clarifies the language in light of the specification. This definition gives effect to both "rolling" and "contact," whereas Defendant's definition reads out "rolling" and merely gives effect to the term "contact." For those reasons, this Court construes "an upward position at which the roller does not come into rolling contact with the base" to mean "an upward position at which the roller does not come into contact with the base sufficient to reduce the burden to slide the mold on the base."

**Conclusion**

It is hereby ORDERED that the disputed claim language be construed as specified above.

**IT IS SO ORDERED.**

Date:  February 21, 2020           /s/ Greg Kays                          
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT